The next case for argument is 22-2063 Kirsch Research v. GAF Materials v. GAF Materials v. GAF Materials I'm Amy Hayden on behalf of Appellant Kirsch Research and Development. Our briefing presents numerous reasons for why the PTAB should be reversed in this case, but I'd like to focus on one, namely that the Board erred in construing the term extrusion lamination because its construction is at odds with the intrinsic record. Thus, the Board likewise erred when it concluded that the Lew patent invalidated Kirsch's patent claims, which is claims 1-20, in view of that construction. Reversal rather than remand is appropriate here because under the proper construction of extrusion lamination, the only evidence-based conclusion is that Lew does not invalidate the challenged claims. So, I don't mean this pejoratively, but this claim construction issue seems to have been the target throughout the proceedings. So, what is your view now on the shortcomings, the problem of the claim construction the Board was using? Yes, Your Honor. So, addressing the moving target issue, we disagree that Kirsch's proposal has been a moving target. Okay, so tell us what it is now and what it was before the Board, what your claim construction is and what your problem is with their claim construction. It's the same construction that we had before the Board. Our position is that the proper claim meeting understanding of extrusion lamination is the specific process that uses both extrusion and pressing to laminate two layers together using the polymer melt as a binder. Does that include, what about, there are two other sub-issues that I read in the briefs. One is three layers. Is that included in your claim construction? Is that a problem you have with the Board's claim construction? Yes. Depending on what you call a layer, there are three layers in the construction that we presented before the Board. So, your construction includes three layers. You're counting the extrusion as one of the three layers. In the answer that I just gave, yes, but I think that there was confusion because our construction described two layers, which would be the two solid materials that are joined using the melt. So, you're saying it's solid, extruded, polymer, solid. That's the way you conceived extrusion lamination. Yes, that's correct. And if one of those, if the extruded was part of the solid layer, so that one might say there's only two layers, you say that's outside the scope of our claims. You need it to be three as opposed to just two. That's your construction. Yes, that's the construction. It would be the two solid layers with the extruded polymer layer. Two plus one being three, right? Yes, exactly. I think my colleague that argued before the PTAB did make that analogy, and I think it's a simple analogy, but it is a suitable one here with the solid layers being like bread and the melted cheese being like the melted extruded polymer that joins the other two layers together. What other gaps or differences are reached in the claim construction you're proposing and the one that the board adopted in the brief? That is the main one. It is somewhat unclear about whether the board included a pressing limitation in its construction. That was raised in the brief, but the board did discuss whether or not the lieu prior art reference disclosed pressing. So, it appears that they may have included that. But if they did not include a pressure requirement, that would be something that would be different with our construction, too. And I'd also like to point out that the petitioner's construction also contained a pressing requirement. In the board's final written decision, they didn't provide an explicit definition for extrusion lamination, which is perhaps why this pressure issue isn't that clear. They rather came to two conclusions about the scope of that term. One, that extrusion lamination doesn't require two layers that are joined together using the extruded polymer melt. Rather, there could be a single layer that's coated with the melt. And the second conclusion is that extrusion lamination and extrusion coating are not mutually exclusive. So, taken together, these conclusions mean that the board concluded that extrusion lamination could just be coating a polymer melt onto a single layer. And that understanding is contrary to the intrinsic record as well as the extrinsic evidence that was presented to the board. If I may, I'd like to begin... What would be your best piece of evidence, intrinsic evidence, that supports the three versus two issue? Your Honor, I think that that would be the prosecution history that's discussed in the briefing. The Peterson distinction? The Peterson distinction and the applicant remarks that went along with the amendment in order to distinguish Peterson. And how does it dovetail with the examination, cross-examination of your expert, Mr. Daniels? Is that problematic for you in terms of the construction you're presenting now? No, it's not, Your Honor. The construction that we're advocating and what the applicant stated during prosecution when making the amendment to add by extrusion lamination to the claims is consistent with what our expert had testified to in his declaration as well as a deposition both before the patent office as well as in depositions in district court. I thought he suggested it could be just two layers. Did he not? Your own expert? The testimony at best is unclear. There was a portion of testimony I think Your Honor may be referring to where there was a layer A and a layer B referred to. That testimony was actually read from an ITC proceeding on an entirely different patent. And the confusion may have come from something we were talking about earlier, how in his terminology layers tend to refer to the solid materials that are joined together with the melt. And when he answered a question about extrusion lamination using his own words, he explained clearly in that. Did the board have reason to interpret this evidence or testimony from your own expert in favor of the petitioner's construction? The board did not address this testimony explicitly in its analysis. The only extrinsic evidence that it addressed, aside from just describing the evidence in the case, was that it credited petitioner's expert testimony. The board did not address Dr. Daniel's testimony, and it also did not address other extrinsic evidence of record, including dictionary definitions and other materials that the party provided. Now this testimony about the two layers, this is taken at Appendix 6075. Is that the section of his deposition that we're talking about, 6075? Oh, I was actually referring to the testimony that is on Appendix 6278, but I'm happy to take a look at that material as well. Did Your Honor have a question about this? Well, yes. I'm looking to his testimony starting at lines 7 and through 11. You referred to laminate two layers together, that's correct. Well, at least two layers, yes, yes. Now are you saying that what he's saying is that two solid layers with extruded in between laminating them together is the interpretation you're getting at? Yes, exactly, and looking at his testimony, well, excuse me, looking at the question at line 12, it reads, and those at least two layers could, for instance, be a scrim and a slip-resistant layer of extruded polypropylene. Here the question referred to extruded polypropylene, but was referring to a slip-resistant layer. This was referring to a pre-extruded layer of polypropylene. This wasn't referring to the polymer melt that would join the reinforcing scrim and the slip-resistant layer together. I would like to hear your explanation of 6278 as well, which I think is the portion of the deposition of your expert that you were referring to. Yes, Your Honor. It seems like they're the experts being read testimony that he gave in another proceeding, is that right? Yes, that's right. He was read testimony from an ITC proceeding that involved a different patent than the one that we are discussing here, a different patent that's not in the same family as the 482 patent. Okay, because he does seem to agree that at least with respect to that other patent, that if one were to extrude layer A onto layer B to come up with a two-layer product, would that be considered extrusion lamination? That's our term in dispute here, and he says essentially yes, because he says only if there was pressure involved. That's a fair reading of his testimony there. You just say it doesn't apply to the patent in front of us. It doesn't apply to the patent in front of us, and looking at his testimony on, I believe that you were looking at the testimony on Appendix 6278 at the top of that page, but looking at his testimony before that, this testimony went on for quite some, this line of questioning went on for quite some time. This is on Appendix 6277. He explained that in a specific case where the conditions were that you extrude a material and bring it together with other components, components plural, and combine them in a design manner with the design manner, meaning layers, again plural, coming together with the extruded layer through a process that applies pressure. That's extrusion lamination. So in putting this in his own words, instead of being presented a hypothetical from a testimony from another case, he made clear that the construction that he was espousing is the same that I'm espousing today and that Kirsch espoused throughout the entire IPR proceeding below. Well, on 6275, he answers the question about what is considered extrusion lamination. Now, this is, to be sure, from a different proceeding, but he does say there are laminates made which involve extruding a material onto a substrate, and that is a subset of extrusion lamination. That struck me as being, certainly suggesting that extrusion, extruding material on top of a substrate is lamination. Understood, Your Honor. But that testimony does not exclude the possibility of a third layer that's included in his construction. No, you could have ten layers, but it does seem to say that at minimum you have to have two layers, one extruded and the other a substrate. Does it not? I would disagree because he is talking here, I'm looking at line three, he said, like, I think this is the testimony that you read, so I won't burden everyone with reading again, but he says that there's laminates made where you extrude material onto a substrate. That's not inconsistent with there needing to be three layers, the extruded layer and two substrates. Just because he said that there's extrusion onto a substrate, that's true with the three-layer product as well. Okay. You're into it as well, so I'll take it from the other side. Good morning. May it please the Court. John Newcomb on behalf of the Appellee GAF Materials. With me today is my valued co-counsel Edward Tulin. I'd like to start by reading for the Court the question which was put to Mr. Kaskowski at his deposition. The question was, and I'm reading from appendix page 6520, Your Honor. This was our expert being deposed by the Patent Owners' Council for the IPR, starting line six of this transcript page. Question. Okay. What would a person of ordinary skill in the art understand the term extrusion lamination to mean? And I won't read for the record because I don't want to put the Court to sleep, but the experts answer there too. The reason I wanted to start there is that issue one on appeal is whether the Board committed an abuse of discretion when it considered a selection of testimony from Mr. Kaskowski about how an ordinarily skilled artisan would have, in the aughts, understood the plain meaning of the term extrusion lamination. In the appellant's reply brief, this testimony is referred to as an unexpected utterance, as though, for example, GAF had impregnated the IPR proceeding with new, broadened expert testimony through redirect questioning at a deposition, or the expert was asked his home address and then decided to give a brand-new expert opinion in response to that question. That's not what happened. What happened here is that Mr. Kaskowski was put up for a deposition. He was asked a question point-blank about the plain meaning of extrusion lamination, and he answered that. So whether the Board committed an abuse of discretion, our first point is the evidence in question is evidence that was elicited by the Patent Owners' Council. Second point, the only reason the Board saw this testimony about the plain meaning of extrusion lamination is because the Patent Owner filed it with the Board. So to overly summarize, the argument before you is that the Board committed an abuse of discretion when it read a deposition transcript that the Patent Owner filed. Well, fair enough, and that's certainly in the briefs, but I understood at least the discussion and the argument this morning was not on the APA use of discretion issue. It was really on plain construction, challenging plain construction. So why don't you address that matter? Happy to do that, Your Honor. So the first piece of material that I would point Your Honor's attention to on whether an extrusion lamination can be a two-layer product, with one layer being the substrate and the other being the extrudate, is Claim 1 itself. Claim 1 refers to a thermoplastic material, or what we're calling today the substrate, in one limitation. It also refers to, in the second limitation, the scrim. A roofing, and I am reading from Appendix 80, Column 6, starting Line 21 of the 482 Patent. A roofing underlayment positioned between a roof support structure and an overlayment comprising a reinforcing scrim of interwoven strands for supporting tensile forces in multiple directions and at least one layer of thermoplastic material affixed to a side of the reinforcing scrim by extrusion lamination for providing a weather-resistant barrier. My point is not to be making a claim construction intrinsic argument to you. My point is to say that the substantial evidence supporting the Board's finding about how a skilled artisan would understand the plain meaning of extrusion lamination in the relevant time period is further consistent with and supported by the claim language itself. There's a discussion of one scrim and one layer of the thermoplastic material. What about your friends that had to say about the prosecution history? I just may be reading the prosecution history file a little differently than my friend. I've read the history. The patent or the applicant certainly introduced Peterson and discussed a distinction with Peterson between extrusion lamination with the insertion of that phrase and the, what was it, calendar rubbering? Pardon me. I'm going to get it. I'm going to get the phrase. And rubber mill calendaring. There was no discussion in that portion of the file wrapper or anywhere else about extrusion lamination being a multi-scrim or multi-layer in addition to the thermoplastic layer application. So I'm not sure how good of an answer that is, Your Honor, because I just don't see how the Peterson distinction during prosecution supports or undermines the multi-layer debate. And what about the coding question? Well, I think if you read, you mean about the slip-resistant coding? Yes. So if you read the patent, there's no question, if you read, for example, Claim 2, that let me take a step back. There was an exchange between Judge Bryson and my friend about, well, it could be more. It could be 10 layers, I think His Honor said. We would agree with that. The point of extrusion lamination to an ordinarily skilled artisan was you needed at least the extrudate and the substrate. You could certainly go beyond that. So if you read Claim 2, for example, there's an explanation that one or more of the layers could be a slip-resistant surface. But that doesn't change either the substantial evidence supporting the two-layer finding of the board as to extrusion lamination. And I don't think it really matters whether the scrim is slip-resistant or not, nor whether there are multiple scrims. You've said substantial evidence several times about the claim construction, and you seem to run away from the claim language that you brought up. Is it your contention that this construction cannot be affirmed just on the intrinsic evidence as a matter of law? If anything I've said today suggests to you I'm running from the claim language, you have suggested that. That is a miscommunication on my part. We were trying to get a better standard of review, but I would argue on the extrinsic evidence, but I would appreciate if the judge starts cautioning you. So to me there's a background issue, which is on appeal, and I'm going to get to Your Honor's question very quickly. I just want to put it into context. On appeal, what we've heard from the patent owner is, this went wrong because there was a late disclosed claim construction position with the reply. That's not how the parties, even the patent owner, were addressing this issue before the board. When GAF cited the testimony of Mr. Kaskowski in its reply, the patent owner then got a surreply. The surreply did not say, we have a problem that's a claim construction. The surreply said, let's debate what the meaning is of this phrase. Both sides consistently, in their written submissions to the board, were addressing this debate not as a claim construction process, but as an evidentiary debate about how that ordinarily skilled artisan would understand the claim meaning. Now, to Your Honor's question, we're certainly not running from the claim language. We see it to be fully consistent with the two-layer solution. And on appeal, do we have a claim construction issue that we need to resolve as a matter of law, or do you think that's not what's before us? I think that affirmance is merited whether it is de novo or whether it is a substantial evidence record. I can see the argument both ways. On one hand, if this— But you don't think we need to decide this claim construction question. You don't think we need to decide which way to go instead. If the court considers what the board did in its interpretation or its finding about the plain meaning to a posita in the aughts to be a claim construction, then it would be subject to a de novo review. If, alternatively, you find it to be a fact finding or a subsidiary finding to answer that question, then it would be substantial evidence. And I don't mean to be running from that question. I see both sides. Whatever standard of review applies, you've got to resolve the question about what that claim language means in terms of the number of layers required or how you look at it. Well, why don't I do this? I am going to, for the sake of argument, treat it right now as a de novo review standard as a claim construction, and I would point the court to the following. Number one, as I just stated, it's claim one itself, in which there's a mention of a singular scrim and there is a mention of a layer of thermoplastic material. Number two, the Kaskowski Deposition Testimony at Appendix 6520 and 6538. Number three, the Daniels, which is the Kirsch Expert Testimony, including at Appendix 6075 and 6118. Also, the Daniels Testimony from the Texas proceeding. How about the specification? Does it have an embodiment with just two layers? Oh, no. As I read at least the figures, we are seeing multi-layers. So you would acknowledge that the specification cuts against you because it only, I know it's not dispositive, but to the extent we have to consider the specification, it only discloses embodiments of three or more layers? Not quite, Your Honor. I would direct the court to the difference between claim one versus claim two as an initial matter, where claim one on its face describes a two-layer solution. And then if you read claim two and the dependent claims that follow thereafter, there's then recognition of additional layers of substrates. I'm happy to turn to whether Lew discloses extrusion lamination. That was the other one of the two issues addressed by my friend, but unless the court has further questions on the meaning or construction, as the case may be, of extrusion lamination. And her argument was, again, I mean, under her point of construction, Lew doesn't, but I guess is she making, is the other side making the argument under the board's construction, Lew doesn't apply? As I understand my friend's argument, it is that the board erred when it found that extrusion lamination could be just a substrate and extraday. You had to have two substrates. Lew, the board found, anticipated claim one and others, because it showed at least that one substrate and at least that one extraday. The board stopped there, given its finding of the meaning of extrusion lamination. If we were to go beyond that, then we go straight into Howells. And I am reading to the court from appendix 52-10. You're in Howells at this point? I am in Howells right now. The board, if I recall correctly, did not predicate its ruling on Howells, right? That's right. So that would create a chenelade problem for us, right? Pardon me, a what problem? Chenelade problem. It could. Look, what the appellant here would like for you to do is to kick this entirely on the idea. That's not right at all. We couldn't decide this case based on Howells. You're just offering it up as an alternative in case we reverse on the first. That's right. You would send it back to Howells. We couldn't decide it in your favor based on Howells, right? Well, we've argued that you can on the idea that a remand would be futile. But given Chenelade, do you continue to suppress that argument? We would prefer a remand over a reversal here. All right. But do you think it would be error for us to affirm based on Howells, given the fact that the board did not base its opinion on Howells? We would concede that, Your Honor. Okay. If one reads Lew, I would direct the court to a couple of sections of that. Number one, if you read the specification, column one, starting line 15, the specification describes a roofing underlayment. If you next go to claim one, claim one describes in quite detail the creation of an underlayment binding a polypropylene, a.k.a. a thermoplastic, to a fibrous base sheet through the use of a calendaring process. If the court then reads figures one and two of Lew, you see in figure one the NIP, which applies the extrudate to the substrate. That's in item 20 of figure one. And then you see in figure two, through the calendaring rules, 50 and 60, applying pressure for the binding of the thermoplastic to the fibrous fabric. I am happy to yield the remainder of my time unless the court has any questions. Thank you. I wanted to begin by addressing the standard review issue that my friend discussed. It's clear under this court's precedent that treatment, both the ultimate conclusion of claim construction as well as the board's treatment of the intrinsic evidence, is subject to de novo review, not the standard review. As I understand the way you have characterized the appeal, there's the APA issue, which we review for abuse of discretion, and then it's claim construction, which you say is de novo, although maybe there's subsidiary fact findings. And then there's Lew, but Lew, you only have an argument on Lew if we do something to the claim construction. If we affirm the claim construction, you have no extra argument on Lew. Do I understand the appeal correctly? Almost, Your Honor. I would point out that one of our arguments on Lew, on whether or not there was pressure that is applied by Lew that's relevant to the extrusion lamination limitation, that may or may not turn on the claim construction if the board included a pressure requirement in its construction, we argue that there is not disclosure. You say Lew does not disclose pressure as your contention. Yes, that's right. Or at least it doesn't disclose pressure contemporaneous with the extrusion, if I understood your argument. Contemporaneous or at least contemporaneous enough before the polymer melt cools, so that pressure can be used to bind the layers together. And I also wanted to discuss the claims, the patent claims. I know that my friend referred to those as well. Claim 1 was amended to add the bi-extrusion lamination limitation. At the same time, a claim not at issue on this appeal, another independent claim, 21, was amended to add different language, extruded to cover. And there's a presumption that those two phrases have to mean something different, but under my friend and petitioner's position in claim construction, they would mean the same thing. So that can't be correct. And then turning quickly to the file history, I wanted to take a look at what the applicant said there. And because my friend is incorrect that there is not a description of two layers being bound together with a binder, I'm reading from, I believe it is appendix 5076. Excuse me, it's 5071. And in distinguishing Peterson, there's the extrusion aspect that distinguishes Peterson, but the applicant went a step further and explained what he meant by extrusion lamination. He stated that contrarily, the roofing underlayment of the present invention is formed by an extrusion lamination process, which bonds the various layers together, including the preformed films, reinforcement scrim, and slip resistant material. Notably, and consistent with the plain meaning that we're advocating for here, the applicant did not include the extruded thermoplastic polymer, the polymer melt, or the binder, as one of those possible layers that could be joined together in an extrusion lamination process, because that's what's usually being used to join the other two layers together. And I see my time is up, unless Your Honor has questions. Thank you.